UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

Z.G.,

       Petitioner,

    v.

SAMUEL OLSON, BRIAN ENGLISH,
KRISTI NOEM, PAMELA BONDI,

       Respondents.

CAUSE NO. 3:26cv119 DRL-SJF

## OPINION AND ORDER

Immigration detainee Z.G., by counsel, petitions for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is being unlawfully detained in violation of the laws or Constitution of the United States. The parties briefed the petition to readiness.

Z.G. is a citizen of Afghanistan. He entered the United States at the southern border in 2021 seeking protection under Operation Allies Refuge/Operation Allies Welcome, and was paroled into the country on a temporary visa. He applied for asylum and for special immigrant status in 2022. After he was granted special immigrant status, he applied for permanent resident status. His temporary status expired on August 31, 2025, but he stayed in the country. On September 4, 2025, he was arrested on an administrative warrant by United States Immigration and Customs Enforcement (ICE) and placed in detention while his removal proceedings progressed.

Last fall, Z.G. filed an earlier habeas petition in the Southern District of Indiana. *See Z.G. v. Olson*, No. 2:25cv584 (S.D. Ind. Nov. 19, 2025). On January 9, 2026, the district court there found that 8 U.S.C. § 1226(a) applied to Z.G.'s detention and granted habeas relief

insofar as it ordered a bond hearing within seven days. On January 15, 2026, an immigration judge held a bond hearing under 8 C.F.R. § 1236 and, after consideration of the evidence, determined Z.G. was a "danger to the community" and denied bond. Z.G. appealed this bond decision to the Board of Immigration Appeals (BIA) on February 12, 2026. At last report, this appeal still pends before the BIA.

A few weeks before, on January 21, 2026, an immigration judge granted Z.G.'s application for asylum and withholding of removal to Afghanistan. The Department of Homeland Security (DHS) filed an appeal with the BIA, which also still pends.

After the asylum decision, Z.G. requested a custody redetermination based on changed circumstances. On February 24, 2026, an immigration judge denied his request for a change in custody status, finding he failed to establish eligibility for a second bond hearing under 8 U.S.C. § 1226(a) because he had not shown "materially changed circumstances" since the last bond decision within the meaning of 8 C.F.R. § 1003.19(e). Z.G. reserved the right to appeal that decision to the BIA.

Z.G. never reports whether he ultimately appealed this decision because, beforehand on January 29, 2026, he filed this habeas corpus petition. Z.G. advances three claims in his petition: (1) a violation of his substantive due process rights because his continued detention, despite the grant of asylum, is punitive and bears no reasonable relation to a legitimate government purpose; (2) a violation of his procedural due process rights because the government failed to follow required procedures to terminate his continued detention after the grant of asylum; and (3) a violation of the Administrative Procedure Act under the *Accardi* doctrine because the government failed to follow what he calls a "Fear-Based Grant

2

Release Policy" to release noncitizens immediately following a grant of asylum. He asks for immediate release on the grounds that his continued detention after his grant of asylum violates his constitutional rights.

The government argues Z.G.'s habeas petition should be denied because he has not exhausted his administrative remedies—namely, (1) his appeal of the immigration judge's denial of his initial request for custody redetermination remains pending before the BIA and (2) he has not appealed the immigration judge's decision denying his second custody redetermination based on "materially changed circumstances." As a dovetail, the government also says Z.G. has not established any due process violation that would serve as an exception to this exhaustion requirement.

The "general rule" is that parties must "exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). When exhaustion of administrative remedies is not statutorily mandated, "sound judicial discretion" governs whether it must be accomplished. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (citation omitted). In exercising discretion whether to depart from the general rule, the court considers "the nature of the claim presented and the characteristics of the particular administrative procedure provided," *McCarthy*, 503 U.S. at 146, always cognizant that "individual interests demand that exhaustion be excused" when:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Gonzalez*, 355 F.3d at 1016 (quoting *Iddir v. INS,* 301 F.3d 492, 498 (7th Cir. 2002)).

By regulation, if a detainee has been denied release by ICE officers after arrest, he may seek a custody redetermination before an immigration judge. 8 C.F.R. § 1003.19(a)-(b). If the detainee's initial custody redetermination is denied, he may request a second custody redetermination by showing that his "circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e). The detainee may appeal the immigration judge's decisions on custody redetermination to the BIA. 8 C.F.R. § 236.1(d)(3).

Z.G. pursued both redeterminations. Thereafter he appealed the initial one and had available the remedy of appealing the immigration judge's decision denying his request for a bond redetermination to the BIA. *See, e.g., Uddin v. Lowe*, 2017 WL 2960791, 3 (M.D. Penn. July 11, 2017) (Nealon, J.) ("discretionary detainees held under 8 U.S.C. § 1226(a) have a whole set of available administrative remedies that should be exhausted before a petition for writ of habeas corpus would be necessary," including appealing the denial of a bond redetermination to the BIA). On one hand, his appeal still pends; and, on the other, nothing in the record shows he pursued his other administrative remedy.

Given the nature of the claim and the characteristics of the particular administrative procedure, *McCarthy*, 503 U.S. at 146, and not least its discretionary nature, the court believes that the better course is to require the petitioner to exhaust his administrative remedies. Creating a separate channel of review by permitting a jump to habeas corpus relief, absent sound concerns with applicable administrative procedures or the overall statutory framework, would be wasteful and inconsistent with the efficiency, expertise, and agency authority created by this administrative process in the immigration context, quite aside from preventing "deliberate bypass of the administrative scheme." *Castaneda-Suarez v. INS*, 993

4

F.2d 142, 145 (7th Cir. 1993) (citation omitted); *see also McCarthy*, 503 U.S. at 145. In short, institutional interests outweigh individual interests today.

Z.G. argues that exhaustion should be excused for three reasons. First, he says it would cause unreasonable delay. He says, even under ordinary circumstances, the BIA could take two years or longer to resolve his appeal. But the rough metrics he cites for this proposition relate to the appeal of asylum relief—not the appeal of a bond redetermination. He offers no evidence that the BIA is currently experiencing inordinate delays in ruling on appeals of bond redeterminations, or whether under any oft-reported average such appeals trend toward the lower end, particularly given that the BIA fast-tracks appeals of detained individuals. 8 C.F.R. § 1003.1(e)(8) (BIA "shall issue a decision on the merits as soon as practicable, with a priority for cases or custody appeals involving detained aliens").[1] As of today, his sole appeal seemingly has been pending just shy of three months.

In any event, it would be unusual to call a customary time an unreasonable one, much less a timeframe that sits well below the average or aspiration. Just because the Seventh Circuit Court of Appeals might take its average time to rule on appeal does not mean that its process of review has become unreasonable. Appeals of all types, whether administrative or not, take time. Appealing the denial of his bond redetermination to the BIA will

---

[1] When a noncitizen appeals an immigration judge's decision denying bond, the BIA issues a briefing schedule giving both parties 20 days to file briefs. 8 C.F.R. § 1003.3(c)(1). The BIA only considers the evidence admitted before the immigration judge. EOIR Policy Manual, Part III, Chapter 3.8 (2026). Perhaps aspirationally, when the government initiates the appeal, BIA practice anticipates a rough 90-day turnaround, as a stay of the immigration judge's decision exists for only 90 days, *see* EOIR Policy Manual, Part III, Chapter 6.3 (2026), and a handful of years ago EOIR policy required that the BIA decide 90 percent of appeals from detained individuals within 150 days of filing, *see* Director James R. McHenry III, *Case Processing at the Board of Immigration Appeals* (Oct. 1, 2019) (available at https://www.justice.gov/eoir/eoir-policy-manual/OOD2001/dl).

necessarily take time too, but nothing convincingly shows any delay will be "unreasonable" or will subject him to an "indefinite timeframe for administrative action." *Gonzalez*, 355 F.3d at 1016; *see, e.g., Mays v. Dart*, 453 F. Supp.3d 1074, 1089 (N.D. Ill. 2020) ("no evidence that detainees who have sought bond hearings are currently facing undue delays").

Second, Z.G. argues that requiring exhaustion would be futile because there is no reasonable prospect the BIA will afford him relief, as the BIA has regularly denied appeals on custody redeterminations. This one-size-fits-all approach isn't compelling. Z.G. offers naught showing the BIA has doomed review of individual bond hearings based on unique considerations of one's danger to the community. Nor does he present any evidence or opinion that the BIA has ever addressed the statutory question that he could have easily exhausted: whether an initial non-final grant of an asylum petition constitutes "materially changed circumstances" under 8 C.F.R. § 1003.19(e). Z.G.'s assertion that the BIA has regularly denied appeals of custody redeterminations on other grounds does not show the BIA has predetermined this issue or that exhaustion would otherwise be futile. *Cf. Perez-Cruz v. English*, 2026 WL 1113351, 3 (N.D. Ind. Apr. 24, 2026) (Leichty, J.) (excusing exhaustion based on "an unbroken record of denials of custody redeterminations" caused by statutory misclassification of noncitizens); *Ramirez Martinez v. Noem*, 813 F. Supp.3d 837, 844 (N.D. Ill. 2025) (Wood, J.) (concluding the BIA had "predetermined the issue" when it had previously addressed the statutory question at issue and concluded aliens were "ineligible for release on bond").

Third, Z.G. argues that exhaustion should be excused because he raises serious constitutional questions. True, "an exception to the exhaustion requirement has been carved

out for constitutional challenges to agency procedures because the BIA has no jurisdiction to adjudicate constitutional issues." *Gonzalez*, 355 F.3d at 1017 (cleaned up). But Z.G.'s question on appeal—whether the immigration judge erred in denying bond because he was a danger to the community—is a question well within the BIA's jurisdiction, and one the BIA is well-equipped to address. And Z.G.'s optional question for appeal—whether an immigration judge might have erred in denying a custody redetermination because an early approval of his asylum petition was not a "materially changed circumstance" within the meaning of 8 C.F.R. § 1003.19(e)—would have been a regulatory question within the BIA's jurisdiction too, and another issue that the BIA could easily decide. *See, e.g., Gonzalez*, 355 F.3d at 1017 (BIA could decide statutory argument). Thus, in certain respects, his complaint about due process is really a complaint about procedural errors that could be redressed through the administrative appeal process, or that he could have redressed through that process if he had pursued it. *See Castaneda-Suarez*, 993 F.2d at 144 (requiring exhaustion as there was "no question" the BIA has authority to address correctible "procedural errors"); *Khan v. Attorney General*, 448 F.3d 226, 236 n.8 (3rd Cir. 2006) (though exhaustion "is not always required when the petitioner advances a due process claim," the court looks beyond the "due process label" and considers whether a purported due process claim "amounts to a procedural error correctible through the administrative process").

His petition rests on three assumptions not always borne out by today's record—that he does not pose a danger to the community (despite effectively two contrary findings, by two different immigration judges, which the court cannot jurisdictionally review); that he has been granted asylum (when in fact no final decision has been reached); and that he is

not subject to a removal order (when he is). The first two necessarily would reorient any constitutional analysis about individual and institutional interests, indeed more definitively once resolved administratively. Suppose, for instance, the BIA reverses the finding of his danger to the community in his still-fledgling appeal—any constitutional worry would be resolved. Suppose, in contrast, the BIA affirms his stark risk to the public—what business does the court have to call this discretionary decision erroneous, even if it could, and order his release nonetheless, or for that matter to call the institutional interest trivial.

Even now, Z.G. suggests he is not subject to a removal order. In actuality, the immigration judge who preliminarily granted asylum and withheld removal recalled that Z.G. admitted the factual allegations in the notice to appear and conceded the charge of removability, and the judge designated Afghanistan as the country of removal [5]. The provisional grant of asylum as well as the withholding of removal by the immigration judge presuppose Z.G.'s removability and serve as a removal order. *See Viracacha v. Mukasey*, 518 F.3d 511, 513-14 (7th Cir. 2008); *see also Monsalvo Velazquez v. Bondi*, 604 U.S. 712, 723 (2025); *Garcia v. Sessions*, 873 F.3d 553, 557 (7th Cir. 2017); *Lolong v. Gonzales*, 484 F.3d 1173, 1177-78 (9th Cir. 2007); *Solano-Chicas v. Gonzales*, 440 F.3d 1050, 1054 (8th Cir. 2006). It just isn't final. Hence there is added reason to resolve these administrative appeals. Suppose in the one the BIA reverses the asylum grant—the law would treat this in effect as a final removal order without need to remand the ruling to the immigration judge.

The rationale for requiring exhaustion "may be even stronger" with a case, like this one, that just dresses up a constitutional question. *In re Establishment Inspection of Kohler Co.*, 935 F.2d 810, 812-13 (7th Cir. 1991). "[T]he exhaustion requirement enables courts to avoid

deciding cases on constitutional grounds unnecessarily; during administrative proceedings the constitutional issue, or the entire case, for that matter, may be resolved favorably for the aggrieved party, obviating the need for the courts to address the constitutional claim." *Id.* at 813. The prudence of constitutional avoidance is perhaps wiser still when Z.G.'s asylum status has not yet become final, *see* 8 C.F.R. §§ 1003.6(a), 1003.39; *see also Jani v. Garland*, 110 F.4th 30, 42 (1st Cir. 2024), and when ripeness complicates one question he tries to raise in his petition. The question of his detention is decidedly ripe, but his entitlement to more procedure or outright release as a gloss from constitutional understandings of due process may change based on how his status and individual interests change (or become moot altogether) based on administrative proceedings. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Sessions v. Dimaya*, 584 U.S. 148, 187 (2018) (Gorsuch, J., concurring in part and concurring in judgment); *Garcia*, 873 F.3d at 557.

This is no small concern. The court lacks jurisdiction to review "operational decisions" to deny bond in a particular case, given the discretion afforded to immigration authorities. *See* 8 U.S.C. § 1226(e); *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999). The court retains jurisdiction to review constitutional challenges to the statutory or regulatory framework that would permit detention without bail. *See Demore v. Kim,* 538 U.S. 510, 516-17 (2003); *Gonzalez*, 355 F.3d at 1014; *Parra,* 172 F.3d at 957; *see also Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (plurality opinion). But that's not what's happening here.

Z.G. is detained under § 1226(a). By its express language, this statute distinguishes between the power to "continue to detain the arrested alien" and the power to "release the alien on . . . bond." 8 U.S.C. § 1226(a); *see Jennings*, 583 U.S. at 308 (same). The statutory

scheme under which he has been detained already builds in the opportunity for bond and an individualized procedure to assess whether it should be granted for any noncitizen—a custody redetermination. In fact, Z.G. effectively got it twice. Unlike other challenges levied under the Fifth Amendment against immigration statutes that, by their terms, would seem to justify detention without individualized determinations of bond, *see Demore*, 538 U.S. at 513 (challenge to § 1226(c)), or might seem to justify indefinite detention, *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (challenge to § 1231(a)(6)), this statute is neither.

Shearing the sheep reveals the wolf: Z.G. is not challenging the statutory framework, or for the purpose of developing an individualized process, much less one that considers bond, his danger to the community, or any other factor; he is trying to use the Fifth Amendment to secure the remedy of release no matter the process. Due process ensures process, not a result. *See Calderone v. City of Chi.*, 979 F.3d 1156, 1166 (7th Cir. 2020). It concerns the provision of fair process when liberty (or life or property) has been deprived— that process of law that is due—not a guarantee of someone's preferred remedy. Z.G. may not like the administrative result to this point, and perhaps the BIA will see it differently, but due process is not a mechanism to disdain his administrative opportunities and then demand a federal judge supply a different remedy. Thus in truth, Z.G. has not raised a substantial constitutional question.

This all weighs heavily when, despite Z.G.'s protestations, he has been afforded a great deal of process and multiple opportunities of review already. The court often has said that "[b]oth noncitizens and the government alike must comply with our immigration laws as they are written and as they must work within constitutional demands." *Esquivel v.*

10

*English*, 2026 WL 1214514, 3 (N.D. Ind. May 4, 2026) (Leichty, J.); *see Zadvydas*, 533 U.S. at 701; *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). The government has established the procedures that apply to noncitizens who are arrested and detained under § 1226(a), and due process requires that these procedures be fairly given, not taken away.[2] *See Accardi*, 347 U.S. at 266-68; *see, e.g., Jideonwo v. I.N.S.*, 224 F.3d 692, 697 (7th Cir. 2000); *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991). On this record, Z.G. has received or been afforded the opportunity to pursue any process that a statute or regulation gives him, including individualized assessments for the purpose of securing his release on bond.

Z.G. offers little to think his process has been insufficient. One district court already granted Z.G. habeas corpus relief by ordering a bond hearing. Z.G. got that hearing. He says the immigration judge held the hearing without considering witness testimony, but Z.G. offers no authority that an immigration judge must do so. *See, e.g., Apouviepseakoda v. Gonzalez*, 475 F.3d 881, 889 (7th Cir. 2007).[3] The immigration judge determined Z.G. was a danger to the community. Whether someone without a criminal conviction could easily be called that, other information in the record could raise serious eyebrows for a jurist, and the court has no jurisdiction to call the immigration judge's discretionary decision right or wrong. That is a remedy of review afforded to Z.G. by the BIA, and that process is underway. From there, Z.G. sought and received another determination before a different

---

[2] Without negative consequence to this petition, the court assumes for today's purposes that the *Accardi* doctrine grows out of concepts of due process rather than just administrative principles.

[3] 8 C.F.R. § 1003.19(d) says an immigration judge may base his or her decision on "any information that is available," without a requirement that the judge hear witness testimony. Executive Office for Immigration Review (EOIR) policy leaves witness testimony in the immigration judge's "discretion," and "mindful that bond hearings are generally briefer and less formal than hearings in removal proceedings." EOIR Policy Manual, Part II, Chapter 8.3 (2026).

immigration judge. She too denied relief, and Z.G. never explains why the process or regulatory framework was somehow constitutionally deficient or how the government failed to comply; indeed, he seemingly never appealed this decision to the BIA. He has not raised a substantial constitutional question when he received the statutory and regulatory process he was due.

Perhaps for this reason, Z.G. leans into various asylum-based release memoranda (what he collectively calls a "Fear-Based Grant Release Policy") [1-10]. He says this internal guidance merits *Accardi* protection. The government counters that immigration authorities followed their controlling statutes and regulations, so assumes this internal guidance falls outside that. In fairness, this so-called detention policy, applicable when an immigration judge has granted asylum, has existed for many years—growing from an internal DHS memorandum in 2000 and repeated by a 2004 memorandum, a 2012 email directive, and a 2021 email reminder. Together, it expresses a "general" policy to favor release of noncitizens who have been granted asylum status by an immigration judge, absent extraordinary concerns. Extraordinary circumstances can include national security threats or dangers to the community, for instance, and need not be hinged on prior criminal convictions. The guidance anticipates a finding of these exceptional circumstances, perhaps by an immigration judge (though it never specifies), with approval by a field office director.

The *Accardi* doctrine requires an agency to follow its procedures as established by statute or regulation, but not typically "an agency's internal memoranda, at least those that are neither designed to protect individual rights nor intended to have the force of law." *Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021). Z.G. cites *Morton v. Ruiz*, 415 U.S. 199, 235 (1974),

but there the agency had an obligation to publish eligibility requirements (from a manual) that informed the public of privileges available for an individual's benefit. Z.G. never draws these parallels here. *See Lincoln v. Vigil*, 508 U.S. 182, 199 (1993) ("No such circumstances [from *Morton*] exist here."). When an internal policy was not "intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion," or when an agent must by rule "exercise independent discretion" but fails to do so, "there is no reason to exempt [the] case from the general principle that it is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it." *American Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538-39 (1970).

And so it is here. For one, this internal guidance expresses merely a general view, not one having the force of law or seemingly established through any rulemaking procedures. Z.G. presents no authority that has found this guidance to have the effect of law. For another, one would need to stretch this guidance to find that it confers benefits on individuals notwithstanding the discretion afforded immigration judges by regulation in custody redeterminations, and a discretion actually exercised twice, by two different immigration judges. After all, by its express terms, this general guidance speaks of benefitting the agency rather than the individual — to "support[] [ICE's] commitment to ensuring that [its] limited detention resources are utilized appropriately." Even so, it permits the agency to insist on detention when a noncitizen presents a danger to the community, and that was the very finding here — one by law unreviewable by the court but one reviewable by the BIA.

13

The court recognizes that, at the time of the initial bond hearing, any preliminary finding of asylum status had not been reached. But Z.G. pursued redetermination based on changed circumstances, and no one says whether he presented this internal guidance as favoring his release. If he did, then he received his process, even as he would wish it from the court today; if he didn't, then perhaps he missed out on his opportunity to exhaust this administrative remedy based on this guidance, or missed out further still by not appealing that decision to the BIA, or perhaps needs to see to it. Either way, he has not developed a substantial constitutional question that would supersede his obligation to pursue his administrative remedies. Absent something else, the court will expect no more and no less than what is expected of immigration officials by law. *See Accardi*, 347 U.S. at 268; *see also United States v. Nixon*, 418 U.S. 683, 696 (1974). That is particularly true when the statute is plain and the regulations are discretionary, and when together they already afford Z.G. individualized determinations to secure his release on bond.

Z.G. cites no binding law that detaining a noncitizen, who has been declared a danger to the community and whose asylum petition still pends, would be constitutionally problematic before he has exhausted his administrative remedies. Perhaps it might seem at a hasty glance a "considerable paradox" to confer a right to release an "alien ordered removed" under *Zadvydas* but not on "one who might have a good defense to removal"— say, with the prospect of asylum. *Hussain v. Mukasey*, 510 F.3d 739, 743 (7th Cir. 2007); *see Zadvydas*, 533 U.S. at 690. But like *Demore*, 538 U.S. at 527-29, at least for today, no one can say removal is "no longer practically attainable," that detention "no longer bears a reasonable relation to the purpose for which the individual was committed" (danger to the

community), or that the period of detention will be "indefinite" or "potentially permanent." *Id.* at 527-28 (quoting *Zadvydas*, 533 U.S. at 690-91).[4] Whatever good *Zadvydas* may have introduced to address these concerns about another statute, that good should not be converted into mischief through the guise of constitutional gloss of this one.

As discomforting as it may seem to some, "Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522; *see also Reno v. Flores*, 507 U.S. 292, 305-06 (1993). Detention is "a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523; *see also Wong Wing v. United States*, 163 U.S. 228, 235 (1896) (deportation proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character"). On this record, the mere hope of asylum does not outweigh the reality of the burden exacted on the administrative process or the interference with the discretion of immigration authorities before this process has played out. Section 1226(a) is plain in already granting the possibility of release on bond, and custody redeterminations are discretionary. Z.G. received his process up to this point, and it's not over. His administrative appeal is still young. Nothing today says Z.G. should lose his appeal or asylum—only that he must exhaust.

The court DENIES this habeas petition [1] and DIRECTS the clerk to close the case.

SO ORDERED.

May 11, 2026                                  *s/ Damon R. Leichty*
                                              Judge, United States District Court

---

[4] Even *Zadvydas* distinguished § 1231(a)(6), the statutory provision it considered, from § 1226, observing that "post-removal-period detention, unlike detention pending a determination of removability . . ., has no obvious termination point." *Zadvydas*, 533 U.S. at 697.